# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:16-CV-00421-GNS-DW

KIMBERLY EVANS                                                                          PLAINTIFF

v.

MIDLAND FUNDING, LLC                                           DEFENDANT

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss and Compel Arbitration (DN 22). Plaintiff has not responded to the motion, and the motion is ripe for adjudication. For the reasons outlined below, the motion is **GRANTED**.

## I. SUMMARY OF FACTS AND CLAIMS

In December 2011, Plaintiff Kimberly Evans ("Evans") opened a credit card account with Credit One Bank, N.A. ("Credit One") with an account number ending in 2964. (Compl. ¶ 6, DN 1; Collins Aff. Ex. 3, at 1, DN 22-1). Evans allegedly used the credit card "exclusively for personal, family, and household purposes . . . ." (Compl. ¶ 7).

It was Credit One's regular practice to hold and service its accounts but to immediately sell the receivable portion of accounts (i.e., the payments from accountholders) to a wholly-owned entity called MHC Receivables, LLC ("MHC"). (Scott Aff. ¶¶ 2-3, DN 22-2). After Evans opened her account, MHC immediately sold the receivable portion of her account to another wholly-owned entity called FNBM, LLC ("FNBM"). (Scott Aff. ¶ 4).

On April 22, 2014, Credit One charged-off Evans' account after she defaulted. (Collins Aff. ¶ 15, DN 22-1; Collins Aff. Ex. 3, at 1). At the time of the charge-off, the account was

subject to the "Credit One Visa/MasterCard Cardholder Agreement, Disclosure Statement, and Arbitration Agreement" ("Agreement"). (Collins Aff. ¶ 10; Collins Aff. Ex. 4, DN 22-1 [hereinafter Agreement]).

On April 30, 2014, Credit One sold Evans' account to MHC, but FNBM still retained the receivable portion of the account. (Scott Aff. ¶ 5, DN 22-2). On May 14, 2014, MHC and FNBM sold their interests in Evans' account to Sherman Originator III LLC ("Sherman"), resulting in Sherman owning all rights to the account. (Scott Aff. ¶ 5; Collins Aff. ¶ 3). On May 21, 2014, Sherman sold a broad portfolio of accounts to Defendant Midland Funding, LLC ("Midland"), which included all rights to Evans' account. (Collins Aff. ¶¶ 3, 6, 9; Collins Aff. Ex. 3, at 1; Mazzoli Aff. ¶¶ 4, 6, DN 22-3).

On March 20, 2015, Midland filed a collection action against Evans in Spencer District Court seeking to recover funds due relating to her Credit One account. (Compl. ¶ 6). Subsequently, on June 8, 2015, Midland obtained a default judgment against Evans, and on July 1, 2015, Midland filed a judgment lien against her. (Compl. ¶¶ 8-9, 11-12; Compl. Exs. A-B, DN 1-2 to 1-3). Through its counsel, Midland also attempted both wage and non-wage garnishments to collect on the judgment. (Compl. ¶¶ 14-21; Compl. Exs. C-F, DN 1-4 to 1-7).

On June 29, 2016, Evans filed this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692o, state law, and a state court rule. (Compl. ¶ 1). In particular, Evans has alleged that counsel for Midland violated the FDCPA because the judgment lien and the garnishments included court costs to which Midland was not entitled. (Compl. ¶¶ 12, 16-23). Evans also has asserted that the judgment lien recording fee and costs associated with filing the garnishments were not awarded in the judgment, and Midlands' efforts to collect such fees and costs violated the FDCPA. (Compl. ¶¶ 24-35). Finally, Evans has

asserted various class claims against Midland. (Compl. ¶¶ 36-52). After filing its answer, Midland moved to compel arbitration and stay or dismiss this case. (Def.'s Mot. Dismiss & Compel Arbitration, DN 22).

## II. JURISDICTION

This Court has subject-matter jurisdiction over Evans' FDCPA claim based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. In addition, the Court has supplemental jurisdiction over her state-law claims. *See* 28 U.S.C. § 1367(a).

## III. STANDARD OF REVIEW

In ruling on a motion to compel arbitration, courts apply the summary judgment standard in Fed. R. Civ. P. 56(c). *See Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011) ("This court will treat the motion to compel arbitration as one for summary judgment . . . ."); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Instead, courts apply the standard applicable to motions for summary judgment." (citations omitted)). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted).

## IV. DISCUSSION

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, a written agreement to arbitrate disputes arising out of contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2).

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). Generally, any doubts regarding arbitrability are to be resolved in favor of arbitration. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citation omitted). *See also Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984) (holding that the FAA preempts state law regarding arbitration).

### A. Agreement to Arbitrate

Initially, the Court must determine whether "a valid agreement to arbitrate exists between the parties . . . ." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (citation omitted). In doing so, the Court must "be[] satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue . . . ." 9 U.S.C. § 4. "State contract law . . . governs in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003) (citations omitted).

In this case, the Agreement contained an arbitration provision. In relevant part, the Agreement provides:

> **PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT**

**TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY A NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

*Agreement* to *Arbitrate:*

You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This arbitration provision is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement.

(Agreement 6). Thus, the Agreement clearly indicated that Evans was waiving her right to a jury trial and agreeing that any claim covered by the arbitration provision in the Agreement would be arbitrated.

As the party opposing the arbitration, it was incumbent on Evans to identify a genuine issue of material fact precluding a finding that the agreement to arbitrate is valid. By failing to respond to the present motion, Evans has waived any right to object. *See* LR 7.1(c) ("Failure to timely respond to a motion may be grounds for granting the motion."). *McLean v. Alere, Inc.*, No. 3:12-CV-566-DJH, 2015 WL 1638341, at *3 n.1 (W.D. Ky. Apr. 13, 2015) ("It is worth noting that failure to timely respond to a motion may be grounds, in itself, for granting the motion." (citing LR 7.1(c))). Notwithstanding her lack of a response, the Court finds that the agreement is valid and reflects Evans' agreement to any claims that she has relating to her Credit One account.

Midland also argues that Evans' class-based claims are nonarbitrable. (Def.'s Mot. Dismiss & Compel Arbitration 14-15). By its terms, the Agreement specifically prohibits such claims. (Agreement 6). These waivers are enforceable, and as a result, Evans is allowed to arbitrate only her claims, not on a class basis. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct.

1740, 1752-53 (2011) ("Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." (citing *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2774 (2010))).

Although not raised by either party, a related issue is whether the Agreement is applicable to Midland, a successor-in-interest to Credit One. As this Court recently noted in construing an arbitration provision under another Credit One account:

> [U]nder Kentucky law, "the rights of an assignee are subject to . . . all the terms of the contract between the account debtor and assigner and any defense or claim in recoupment arising from the transaction that gave rise to the contract . . . ." [KRS 355.9-404] [also] extends to the assignee of accounts receivable.

*Holland v. LVNV Funding, LLC*, No. 5:16-CV-00069, 2016 WL 6156187, at *7 (W.D. Ky. Oct. 21, 2016) (internal citations omitted) (citation omitted). Thus, based on Kentucky law, this Court held in *Holland* that the arbitration provision applied to the plaintiff's claims asserted against a successor-in-interest to Credit One. *See id.* at *10. Applying *Holland* to the present case, Midland is a successor-in-interest to Credit One, and under the terms of the Agreement, Evans is required to arbitrate her claims against Midland.

  B.  **<u>Scope of Agreement to Arbitrate</u>**

The Court must next consider whether Evans' claims fall within the scope of the arbitration provision in the Credit One Agreement. The arbitration provision applies to a broad range of claims, including any claims arising from "disputes relating to . . . collections matters relating to your account . . . ." (Agreement 6). In terms of the legal basis of any claims asserted, the Agreement provides:

> Claims subject to arbitration include Claims based on any theory of law, any contract, statute, regulation, ordinance, tort (including fraud or any intentional tort), common law, constitutional provision, respondeat superior, agency or other doctrine concerning liability for other persons, custom or course of dealing or any other legal or equitable ground (including any claim for injunctive or declaratory

6

relief). Claims subject to arbitration include Claims based on any allegations of fact, including an alleged act, inaction, omission, suppression, representation, statement, obligation, duty, right, condition, status or relationship.

(Agreement 6). In this case, Evans' claims relate to efforts to collect on her defaulted account and squarely fall within the broad scope of the claims covered by the Agreement. *See Martin v. Cavalry SPV I, LLC*, No. 13-88-GFVT, 2014 WL 1338702, at *9 (E.D. Ky. Mar. 31, 2014) ("Courts resolving similar disputes involving broad arbitration provisions in credit card agreements routinely find that claims concerning alleged violations of the FDCPA and state usury laws are subject to the arbitration provision in the credit card agreement." (citations omitted)). Thus, Evans' claims are clearly within the scope of the Agreement.

### C. Congressional Intent to Exclude Claims

The Court must also consider whether Congress intended for any claims asserted by Evans to be nonarbitratable. As the party opposing the arbitration, Evans is responsible for identifying any such excluded claims but has failed to do. Regardless, a sister court has held that FDCPA claims may be subject to arbitration under the FAA. *See Hodson v. Javitch, Block & Rathbone, LLP*, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008). Accordingly, there is a lack of any Congressional intent to preclude the Court from order Evans to arbitrate her claims.

### D. Exclusion of Any Claims from Arbitration

As discussed above, the Court has held the Evans is contractually obligated to arbitrate her claims against Midland. Based on the terms of the arbitration provision, none of the claims are excluded from arbitration.

For these reasons, Evans has contractually agreed to arbitrate her claims against Midland as a successor-in-interest to Credit One, and she is precluded from asserting class claims. The Court will enforce the parties' agreement and order the arbitration of Evans' claims.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and Compel Arbitration (DN 22) is **GRANTED**, and the case is **DISMISSED**. The parties shall arbitrate their dispute, and the Clerk shall strike this case from the active docket.

**Greg N. Stivers, Judge
United States District Court**

April 10, 2017

cc: counsel of record